**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,

Plaintiff,

vs.

RICARDO SERVANDO FRUTOS-LOPEZ,

Defendant.

Case No. 2:05-cr-00405-JCM-GWF

**FINDINGS & RECOMMENDATIONS**

This matter is before the Court on Defendant Ricardo Servando Frutos-Lopez's Motion to Dismiss Indictment Based on Prior Unlawful Deportation (#20), filed on July 21, 2006; the Government's Response to Defendant's Motion to Dismiss Based on Prior Unlawful Deportation (#21), filed August 1, 2006; and Defendant's Reply to Government's Response to Defendant's Motion to Dismiss Based on Prior Unlawful Deportation (#22), filed on August 4, 2006. The Court conducted a hearing on this matter on August 22, 2006.

Defendant Frutos-Lopez was indicted on October 26, 2005 for violation of 18 U.S.C. § 1326 - Unlawful Reentry of Deported Alien. The indictment charges that on or about September 23, 2005 and October 5, 2005, Defendant, an alien, who had been deported and removed from the United States on or about March 28, 2001, was found in the United States, having unlawfully reentered and remained in this country without the express consent of the Attorney General or his successor, the Secretary for Homeland Security. Defendant moves for dismissal of the indictment on the grounds that at time of his deportation hearing in March 2001, the Immigration Judge did not advise Defendant of his rights to seek

relief from deportation and that Defendant's waiver of his right to appeal the deportation order was, therefore, invalid based on the violation of his due process rights.

**FACTUAL AND PROCEDURAL BACKGROUND**

Defendant Frutos-Lopez, a non-citizen, became a lawful permanent resident of the United States on or about July 6, 1990. On March 8, 1999, an amended felony complaint ("complaint") was filed against Defendant and three co-defendants in the Municipal Court of Los Angeles Judicial District, County of Los Angeles, California. *Government's Response* (#21), *Attachment*, pages 4-9. Count 1 of the complaint charged Defendant Frutos-Lopez and the co-defendants with Second Degree Robbery in violation of California Penal Code § 211. Count 2 charged Defendant Frutos-Lopez and the co-defendants with Conspiracy to Commit a Crime in violation of California Penal Code § 182(a)(1). Counts 3, 4 and 5 charged Defendant Frutos-Lopez and the co-defendants with Attempted Second Degree Robbery in violation of California Penal Code § 644/211. *Id.* According to the complaint, all of the alleged criminal acts occurred on February 23, 1999. An abstract of judgment shows that on April 14, 1999 Defendant Frutos-Lopez was convicted pursuant to a guilty plea on Count 1, Second Degree Robbery and was sentenced to a term of imprison of three years. Government's *Response* (#21), *Attachment*, page 3.

On August 30, 1999, the Immigration and Naturalization Service issued a Notice to Appear to Defendant stating that he was deportable on the basis of his April 14, 1999 conviction for Second Degree Robbery in violation of California Penal Code § 211, which constituted an aggravated felony as defined in Section 101(a)(43)(F). *Defendant's Motion* (#20), Exhibit "C." Defendant Frutos-Lopez and other respondents appeared before an Immigration Judge for a deportation/removal hearing on March 13, 2001. The Immigration Judge first addressed the respondents collectively and advised them of the nature of the charges against them and their right to obtain counsel. *Defendant's Motion* (#20), Exhibit "F." The Judge advised the respondents that the hearing was to decide if the accusations filed against them were true and to give them a full and fair opportunity to make a statement and present a defense and to decide if they were entitled to remain in the United States or to be removed to their native country. *Id.,* page 3. The Immigration Judge also advised the respondents that the purpose of the hearing was to also to decide if there was any application for relief that they could file with the Court to stay in

this country. The Judge further stated:

> I tell you, however, that before we start the hearing, I looked at each of the charges that relate to you and, if the information in the charging document is correct, there is no relief the Court can grant you. However, if during the hearing some new information becomes available and you can submit some type of an application to stay in the United States, the rule is that I will tell you what the application is and provide you with the copy of an application and arrange to have someone help you fill it out. But as I mentioned earlier, if the information in the charge that relates to you is correct, there is no pardon or permit or waiver that I can grant you. *Id.*

Thereafter, the Immigration Judge addressed Defendant Frutos-Lopez individually. *Defendant's Motion* (#20), Exhibit "F," pages 12-15. During that colloquy, Defendant initially waived his right to be represented by counsel. The Immigration Judge advised Defendant that he was charged with being deportable as an aggravated felon who was convicted of Second Degree Robbery and sentenced to confinement for a period of three years. Defendant admitted or pled guilty to this charge. The Immigration Judge then advised Defendant:

> Alright, based on what you tell me, I know of no waiver, permit or pardon I could grant you, but if there's anything you wanted to say, I'll listen carefully. *Id.,* page 13.

Defendant advised the court that he had a private attorney who was looking into his case. The Immigration Judge indicated to Defendant that he should discuss the matter with his private attorney. *Id.,* pages 13-14. The Court then stated:

> Q. . . . [B]ased on the record, then, I'm going to sign an order for your removal and deportation to Mexico and then you'll have to work with a private lawyer to see if there's any way for you to come back.
>
> A. I understand.
>
> Q. And with that, then, having determined that there's no relief the Court can grant you, I've signed an order for your removal and deportation to Mexico. Do you understand sir? Do you understand?
>
> A. Yes, I do.
>
> Q. And you can either appeal and have an appellate court review your record or you can accept the deportation and removal order.
>
> A. I accept it.
>
> Q. Alright, good luck, Mr. Frutos, and then you talk to your private lawyer and see if there's anything that he can do for you.

A. Thank you, sir.

*Defendant's Motion* (#20), Exhibit "F," page 14.

The order of removal was then entered by the Immigration Judge, noting that Defendant waived his right to appeal. *Defendant's Motion* (#20), Exhibit "D."

**DISCUSSION**

The issue on this motion is whether Defendant's prior conviction for Second Degree Robbery under California Penal Code Section 211 was an aggravated felony pursuant to which Defendant was not eligible for other forms of relief besides removal and deportation. Defendant contends that the Government cannot demonstrate that his conviction was an aggravated felony. He therefore contends that his due process rights were violated because the Immigration Judge did not inform him of the other forms of available relief for which he could apply.

8 U.S.C. § 1326 prohibits any alien from entering the United States after he has been denied admission, excluded, deported or removed. In a criminal prosecution under 8 U.S.C. § 1326, the "Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation proceeding." *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001), quoting *United States v. Arrieta,* 224 F.3d 1076, 1079 (9th Cir. 2000). The validity of the underlying deportation order may be collaterally attacked in the criminal proceeding unless the alien validly waived his right to appeal that order during the deportation proceeding. *Id.* In order for the waiver to be valid, it must be both "considered and intelligent." A waiver is not "considered and intelligent" when the record contains an inference that the alien is eligible for relief from deportation, but the Immigration Judge fails to advise the alien of this possibility and give him the opportunity to develop the issue. *United States v. Muro-Inclan*, *supra,* at 1182.

When a defendant moves to dismiss an indictment under 8 U.S.C. § 1326 based on a due process violation in the underlying deportation proceeding, he must show prejudice resulting from the due process violation. To establish prejudice, defendant does not have to show that he actually would have been granted relief, but is only required to show that he had a plausible ground for relief from deportation. *United States v. Muro-Inclan*, *supra,* at 1184, citing *United States v. Arrieta,* 224 F.3d at 1079.

In this case, Defendant argues that the Immigration Judge failed to advise him of two forms of relief from deportation and removal for which Defendant was eligible. First, pursuant to 8 U.S.C. §1229b(a), the Attorney General may cancel removal in the case of an alien who has been lawfully admitted for permanent residence for not less than five years, has resided in the United States continuously for seven years, and has not been convicted of any aggravated felony. Secondly, pursuant to 8 U.S.C. §1229c(a)(1), the Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense in lieu of deportation if the alien is not deportable under section 1227(a)(2)(A)(iii) (conviction of an aggravated felony) or under section 1227(a)(4)(B) (terrorist activities). Because the Immigration Judge determined that Defendant's 1999 conviction was an aggravated felony, he did not inform Defendant that he was eligible to apply for either form of relief from deportation and removal. Instead, the Immigration Judge informed Defendant that "there's no relief the Court can grant you." *Defendant's Motion* (#20), Exhibit "F," page 14. Defendant's Motion to Dismiss therefore hinges on whether the Immigration Judge's determination that the 1999 conviction was an aggravated felony under 8 U.S.C. § 1101(a)(43)(F) was correct.

8 U.S.C. § 1101(a)(43)(F) of the Immigration and Nationality Act defines an "aggravated felony as "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is][1] at least one year."

18 U.S.C. § 16, in turn, defines a "crime of violence" as

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

In determining whether Defendant's conviction under California Penal Code § 211 constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), the court is first required to apply the categorical approach adopted by the Supreme Court in *Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143,

---

[1]The statute has been construed to include the word "is." *See United States v. Corona-Sanchez,* 291 F.3d 1201, 1204 n. 3 (9th cir. 2002).

109 L.Ed.2d 607 (1990). The categorical approach generally requires the court to look at the state statutory definition of the crime rather than the underlying factual circumstances to determine whether it is an aggravated felony under federal law. *United States v. Castillo-Rivera*, 244 F.3d 1020,1022 (9th Cir. 2001). Under this approach, the issue is not whether the actual conduct constituted an aggravated felony, but whether the full range of conduct encompassed by the state statute constitutes an aggravated felony. *Id.,* citing *United States v. Sandoval-Barajas*, 206 F.3d 853, 855-56 (9th Cir. 2000).

California Penal Code § 211 provides as follows:

> ROBBERY DEFINED. Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.

California Penal Code § 212.5 defines certain types of robberies, such robbery from the operator or passenger on a public or commercial carrier, robberies perpetrated in a dwelling house, or robbery from a person using an automated teller machine, as first degree robbery. All other kinds of robbery are second degree. Second degree robbery is punishable by imprisonment in the state prison for two, three or five years. Cal. Penal Code § 213(a)(2).

Defendant does not dispute that the definition of robbery as defined in Cal. Penal Code § 211, on its face, satisfies the definition of a "crime of violence" in 18 U.S.C. § 16. The punishment for second degree robbery under Penal Code § 213(a)(2), also meets the requirement in 8 U.S.C. § 1101(a)(43)(F) that the term of imprisonment is at least one year. Based on *United States v. Corona-Sanchez*, 291 F.3d 1201, 1207 (9th Cir. 2002), and subsequent Ninth Circuit decisions, however, Defendant argues that *Taylor's* categorical approach cannot be applied to a conviction under Cal. Penal Code § 211, or virtually any other conviction under a California criminal statute, because a person may be convicted under Penal Code § 211 for "aiding and abetting," which does not qualify as an aggravated felony under 8 U.S.C. § 1101(a)(43).

In *Corona-Sanchez*, the defendant pled guilty to the charge of being a deported alien found in the United States in violation of 8 U.S.C. § 1326(a). The district court deemed the defendant's prior California petty theft conviction to be an aggravated felony and therefore increased the defendant's base offense level pursuant to § 2L1.2(b)(1)(A) of the Sentencing Guidelines. In reversing the defendant's sentence, the court held that defendant's conviction for theft under Cal. Penal Code § 484(a) did not

qualify as an aggravated felony under the *Taylor* categorical approach. The court held that the generic theft offense in 8 U.S.C. § 1101(a)(43)(G) has been defined as "a taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Corona-Sanchez*, 291 F.3d 1205, citing *Hernandez-Mancilla v. INS*, 246 F.3d 1002, 1009 (7th Cir. 2001).

In holding that a conviction under Penal Code § 484(a) did not constitute an aggravated felony under "the full range of conduct encompassed by the state statute," the court stated:

> In comparing the *Hernandez-Mancilla* definition of "theft offense" with § 484(a), it becomes apparent that § 484(a) is broader than the generically defined offense. Significantly, it allows a conviction for theft when the defendant has neither taken, nor exercised control over, the property. *See, e.g., People v. Coffelt,* 140 Cal.App. 444, 35 P.2d 374, 376 (1934). A defendant can be convicted of the substantive offense of violation of § 484 for aiding and abetting a theft, even if that theory is not specifically charged. *See* Cal.Penal Code §§ 31, 971; *People v. Rose,* 56 Cal.App.4th 990, 992, 65 Cal.Rptr.2d 887 (1997); *People v. Guzman,* 45 Cal.App.4th 1023, 53 Cal.Rptr.2d 67, 69 (1996); *see also* 18 Cal. Jur.3d (Rev), *Criminal Law* § 1132 (1985). Under California law, aiding and abetting liability is quite broad, extending even to promotion and instigation. *See People v. Beeman,* 35 Cal.3d 547, 199 Cal.Rptr. 60, 674 P.2d 1318, 1325-26 (1984). Thus, it would not be apparent from reference to the statute of conviction alone to discern whether or not the criminal act was embraced within the federal sentencing definition. Therefore, a conviction under § 484(a) cannot serve as a qualifying offense. *See Rivera-Sanchez,* 247 F.3d at 909.

*Corona-Sanchez*, 291 F.3d at 1207-08.

As the foregoing passage demonstrates, the statute under which the defendant in *Corona-Sanchez* was convicted permitted punishment for conduct broader than the generic definition of the crime in 8 U.S.C. § 1101(a)(43)(G). *Corona-Sanchez* arguably left open the question whether "aiding and abetting" a generically defined aggravated felony can qualify as an aggravated felony under the categorical approach. This question is answered in the negative in *Martinez-Perez v. Gonzales*, 417 F.3d 1022 (9th Cir. 2005).

In *Martinez-Perez*, the defendant was convicted of "grand theft" under Cal. Penal Code § 487(c). The INS charged that defendant was subject to removal under 8 U.S.C. § 1227(a)(2)(A)(iii) on the grounds that his conviction under § 487(c) was an aggravated felony. The Immigration Judge concluded that it was an aggravated felony and that defendant was therefore ineligible for any relief from removal.

The defendant appealed arguing that his conviction did not constitute an aggravated felony. The court held that unlike "theft" under Penal Code § 484(a), the crime of "grand theft" under § 487(c) is a generic theft offense under 8 U.S.C. § 1101(a)(43)(G). In holding that defendant's conviction under § 487(c) did not qualify as an aggravated felony under the categorical approach, however, the court stated:

> Here, just as a defendant can be convicted of the substantive offense of theft under § 484(a) for merely aiding and abetting a theft, it appears that a defendant also can be convicted of the substantive offense of grand theft person under § 487(c) based on an aiding and abetting theory. *See People v. Beeman,* 35 Cal.3d 547, 199 Cal.Rptr. 60, 674 P.2d 1318, 1325-26 (1984) (en banc) (holding that defendant is liable under aiding and abetting theory if he "act[ed] with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense"); *People v. Melendez,* 224 Cal.App.3d 1420, 274 Cal.Rptr. 599, 602 (1990) (discussing jury instructions explaining aiding and abetting theory on which grand theft conviction could be based). *See also People v. Mitchell,* 183 Cal.App.3d 325, 228 Cal.Rptr. 286, 291 (1986) (concluding that sufficient evidence supported conviction for robbery based on aiding and abetting liability). Therefore, as with § 484(a), it would not be apparent from reference to § 487(c) alone whether or not the criminal act was embraced within the generic definition of theft offense under 8 U.S.C. § 1101(a)(43)(G). *See Corona-Sanchez,* 291 F.3d at 1208. Because a defendant can be convicted of the substantive violation of § 487(c) based on an aiding and abetting theory alone, some of the conduct proscribed by § 487(c) falls outside the generic definition of theft offense. We therefore hold that grand theft under § 487(c) of the California Penal Code does not facially qualify as an aggravated felony under § 1101(a)(43)(G) under the categorical approach.

*Martinez-Perez*, 393 F.3d 1022-23.

The same rationale applies to a conviction for second degree robbery under Cal. Penal Code § 211. *Martinez-Perez*, *supra,* citing *People v. Mitchell,* 183 Cal.App.3d 325, 228 Cal.Rptr. 286, 291 (1986). Therefore, Defendant Frutos-Lopez's conviction under Cal. Penal Code § 211 does not qualify as an aggravated felony under the categorical approach.

The court is permitted to apply a "modified categorical approach" in certain cases to determine whether a defendant's conviction constitutes an aggravated felony. As *United States v. Rivera-Sanchez*, 247 F.3d 905 (9th Cir. 2001) explains:

> *Taylor* also permits courts "to go beyond the mere fact of conviction in a narrow range of cases." 495 U.S. at 602, 110 S.Ct. 2143. When a statute "reaches conduct that would constitute a crime of violence and conduct that would not," *Ye v. INS,* 214 F.3d 1128, 1133 (9th Cir. 2000), we have interpreted *Taylor's* edict to include examination of "documentation or

> judicially noticeable facts that clearly establish that the conviction is a predicate conviction for enhancement purposes[,] such as the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the transcript from the plea proceedings." (citation omitted).

*United States v. Corona-Sanchez* states that "[t]he idea of the modified categorical approach is to determine if the record unequivocally establishes that the defendant was convicted of the generically defined crime, even if the statute defining the crime is overly inclusive." 291 F.3d at 211. In *Martinez-Perez,* the court described the type of documents that a court can consider in applying the modified categorical approach:

> In *Shepard v. United States,* 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), the Supreme Court recently clarified the documents that a sentencing court can consider in applying the modified categorical approach to prior convictions obtained by guilty plea. The Court explained that the sentencing court can look only to "the charging document, written plea agreement, transcript of plea colloquy, and any explicit findings by the trial judge to which the defendant assented." *Id.* at 1257. These are documents from which "a later court could generally tell whether the plea had 'necessarily' rested on the fact identifying the burglary as generic ... just as the details of instructions could support that conclusion in the jury case, or the details of a generically limited charging document would do in any sort of case." *Id.* at 1260; *see also Corona-Sanchez,* 291 F.3d at 1211 (explaining that the court can consider the charging documents in conjunction with the plea agreement, the transcript of a plea proceeding, or the judgment to determine whether the defendant pled guilty to the elements of the generic crime). Charging papers alone, however, are never sufficient. *Id.*

*Martinez-Perez,* 417 F.3d 1028.

In *Martinez-Perez*, the administrative record did not contain any plea agreement or transcript of the defendant's plea proceeding. The only documents presented were the information which charged the defendant with second degree robbery under Penal Code § 211, a minute order memorializing a probation violation, and the abstract of judgment which showed that defendant pled guilty to a violation of § 487(c) of the California Penal Code. In holding that these documents were not sufficient to determine whether defendant pled guilty to all of the elements of a theft offense as generically defined, the court stated:

> Further, because the administrative record does not include a plea agreement, a transcript of the plea colloquy, or a statement of the factual basis for the guilty plea, *cf., Parilla v. Gonzales,* 414 F.3d 1038, 1044 (9th Cir.2005), we likewise cannot determine whether Martinez pled guilty to the taking of property, without consent, with the criminal intent to deprive

> the owner of rights and benefits of ownership, as a principal and not as an aider or abettor, as required by the generic definition of a theft offense. *See Corona-Sanchez,* 291 F.3d at 1205.

*Martinez-Perez*, 417 F.3d 1028-29.

In *United States v. Navidad-Marcos*, 367 F.3d 903, 908-09 (9th Cir. 2004), the court held that an abstract of judgment did provide unequivocal evidence that the defendant pled guilty to all the elements of a qualifying generic offense, where the abstract contained only a brief notation regarding the statute of conviction and described it as "Transport/sell cont. sub." The court noted that under California law, an abstract of judgment is not the judgment of conviction; does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize. *United States v. Navidad-Marcos*, 367 F.3d at 908-09, citing *People v. Mitchell*, 26 Cal.4th 1881, 109 Cal.Rptr.2d 303, 26 P.3d 1040, 1042 (Cal. 2001). The court further noted that preparation of an abstract of judgment is a clerical, not a judicial, function and that California appellate courts routinely grant requests on appeal to correct errors in the abstract of judgment. The abstract of judgment form does not contain information as to the criminal acts to which the defendant unequivocally admitted in a plea colloquy before the court. *Navidad-Marcos*, 367 F.3d at 909.

In this case, the only evidence of Defendant Frutos-Lopez's conviction was the Amended Felony Complaint in which he and three other defendants were charged in four counts involving Second Degree Robbery under Penal Code § 211 (Count 1); Conspiracy to Commit a Crime in violation of Penal Code § 182(a)(1) (Count 2); and Attempted Second Degree Robbery (Counts 3, 4 and 5). The abstract of judgment shows that Defendant pled guilty to Count 1, Second Degree Robbery in violation of Penal Code § 211. Although Defendant Frutos-Lopez pled guilty to Count 1, there is no unequivocal proof that he pled guilty as a principal and not as an aider or abettor. Therefore, these records are insufficient to show unequivocally that Defendant pled guilty to all of the elements of a crime of violence under 18 U.S.C. § 16, and therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(F).

The Government argues that Defendant's 1999 conviction can still be upheld as an aggravated felony because the legal theory under which Defendant and his co-defendants were charged in the Amended Felony Complaint included the crime of conspiracy. The Government argues that co-conspirator liability is included in the definition of aggravated felony under 8 U.S.C. § 1101(a)(43)(U).

Had Defendant been convicted under Count 2 of the complaint, the Government's argument would have potential merit. There is no evidence, however, Defendant Frutos-Lopez was convicted of conspiracy as charged in Count 2 of the complaint. The only evidence provided is that Defendant was convicted under Count 1 for second degree robbery. Although allegations in the complaint indicate that Defendant was charged as a principal in Count 1, absent judicially noticeable documents, such as a copy of the plea agreement or a transcript from the plea proceeding, unequivocally showing that he pled guilty as a principal, there is insufficient evidence under the modified categorical approach to establish that the conviction was an aggravated felony.

## CONCLUSION

The Court finds that there is no unequivocal evidence that Defendant Frutos-Lopez's April 14, 1999 conviction was an aggravated felony within the meaning of 8 U.S.C. § 1101(a)(43)(F). Because the Immigration Judge did not have sufficient evidence to determine that Defendant's prior conviction was an aggravated felony, he erroneously failed to advise Defendant that he was eligible to apply for certain forms of relief from deportation, including cancellation or removal or voluntary departure. The Court therefore finds that Defendant's waiver of his appeal rights from the Immigration Judge's order for removal and deportation was not "considered and intelligent."

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Dismiss Indictment Based on Prior Unlawful Deportation (#20) be GRANTED.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within ten (10) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of

. . .

. . .

the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 24th day of August, 2006.

GEORGE FOLEY, JR.
UNITED STATES MAGISTRATE JUDGE